```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
GUILLAME JACQUETY,                  :
                                    :
                       Petitioner,  :     19 Civ. 9642 (VM)
                                    :
     - against -                    :     DECISION AND ORDER
                                    :
GERALDINE HELENA TENA               :
BAPTISTA, et al.,                   :
                                    :
                       Respondents. :
------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/7/2020

**VICTOR MARRERO, United States District Judge.**

Petitioner Guillaume Jacquety ("Petitioner" or "Jacquety") commenced this action on October 18, 2019 by filing a petition against his estranged wife, Respondent Geraldine Helena Tena Baptista ("Baptista" or the "Mother") and her alleged boyfriend, Yousseff Wadghiri ("Wadghiri") under the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. 9001 et seq., the implementing legislation of the Hague Convention on the Civil Aspects of International Child Abduction (the "Hague Convention").

Pending before the Court is a pre-motion letter submitted by Wadghiri regarding his anticipated motion for summary judgment. (See the "August 27 Letter," Dkt. No. 65.) The Court also received a letter response from Jacquety (see the "September 24 Letter," Dkt. No. 72), and a reply letter from Wadghiri (see the "October 6 Reply Letter," Dkt. No. 75). The Court construes Wadghiri's

1

August 27 Letter as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.[1] For the reasons set forth below, the motion is DENIED.

## I.     BACKGROUND

A.   FACTS[2]

Jacquety and Baptista were married in France on May 23, 2014. Their minor child, EJ (the "Child"), was born a little over a year later, on April 23, 2014 in Casablanca, Morocco, where the couple made their home. The Child lived in Morocco with both parents until November 3, 2018 when Baptista took the Child to Switzerland to visit Baptista's mother.

At this point the parties' accounts diverge. Jacquety alleges that Baptista's mother, an employee of the Portuguese Embassy in Switzerland, helped Baptista to obtain forged Portuguese travel documents for the Child. Instead of returning to Morocco after the visit, Baptista used those documents to take the Child to New York City on November 8, 2018. Jacquety alleges that, upon arriving in New York, Baptista brought the Child to the home of

---

[1] See Kapitalforeningen Lægernes Invest v. United Techs. Corp., 779 F. App'x 69, 70 (2d Cir. 2019) (Mem.) (affirming district court ruling deeming pre-motion letter as the motion itself).

[2] The Court construes any disputed facts discussed in this section and the justifiable inferences arising therefrom in the light most favorable to the nonmovant, as required under the standard set forth in Section II.A below.

2

Wadghiri, a radiologist living in Manhattan with whom she was and is having a romantic relationship. According to Jacquety, Wadghiri assisted in planning and executing the scheme, and since November 2018, he and Baptista have wrongfully kept the Child in New York.

In connection with his briefing on the present motion, Jacquety makes additional claims regarding Wadghiri's involvement. Specifically, Jacquety alleges that after Baptista and the Child left Switzerland, they stopped in Portugal where Wadghiri met them. There, according to Jacquety, Wadghiri and the Mother met with a lawyer who advised them on how to further deceive Jacquety. Jacquety contends that Wadghiri personally drafted a letter for Baptista to send to him, stating she would not return and making false claims of abuse. Jacquety claims that Wadghiri eventually took charge of the purported scheme to prevent Jacquety from recovering the Child by asserting claims of domestic violence in the courts of New York and as part of a claim for asylum.[3] Jacquety further alleges that Wadghiri obtained counsel for Baptista and has provided direct and consistent assistance in the execution of their plan.

---

[3] On May 16, 2019, Baptista filed an application for asylum and withholding of removal in the United States.

In support of these claims, Jacquety attaches to his letter an Electronic System for Travel Authorization ("ESTA") form, which Baptista filled out before arriving in the United States, listing Wadghiri's address as the place she planned to stay. Jacquety also attaches numerous text messages between Wadghiri and Baptista and Baptista's mother, all of which, he argues, establish both the romantic nature of the relationship between Wadghiri and Baptista as well as Wadghiri's role in the alleged abduction.

In a jointly filed answer to the Petition, Baptista and Wadghiri deny these allegations. They assert that Jacquety "consented to or acquiesced in" the Child's removal to New York. Answer ¶ 17. Baptista and Wadghiri explain that Jacquety has a history of drug and alcohol abuse, has abused these substances in front of the Child, and has physically abused both Baptista and the Child. The Answer details numerous alleged instances of violence and abuse on the part of Jacquety against Baptista, in many cases endangering the Child. Jacquety denies these allegations.

In his October 6 Reply Letter, Wadghiri argues that the text exchanges Jacquety cites do not prove that Wadghiri provided anything more than sanctuary to a

4

battered woman and her child. With regard to the ESTA form, Wadghiri points out that the excerpt Jacquety attached to the September 24 Letter does not reference the Child. Wadghiri characterizes Jacquety's assertions as conclusory and insists that they do not offer any evidence that he has control over Baptista or the Child.

B. PROCEDURAL HISTORY

Before Jacquety commenced this action on October 18, 2019, Baptista filed a complaint alleging claims of domestic abuse against him in Moroccan court on February 25, 2019. A few months later, on April 14, 2019, she filed for divorce in that same court and sought full custody of the Child. Jacquety cross filed for divorce and custody of the Child.

On August 21, 2020, Baptista filed a letter in this Court regarding a potential summary judgment motion. (See "August 21 Letter," Dkt. No. 63.) In that letter, Baptista informed that the Moroccan court -- where the divorce and custody proceedings are pending -- had issued an order on June 16, 2020 awarding her physical custody of the Child. This interim custody order, she argued, rendered Jacquety's Petition moot.

On August 24, 2020, Jacquety filed a response, arguing that the proposed motion for summary judgment was premature

5

because the interim custody order was not final. (See "August 24 Letter," Dkt. No. 64.)

In the August 27 Letter, Wadghiri set forth his arguments in support of summary judgment, incorporating Baptista's arguments regarding the interim custody order by reference, and additionally arguing that he is an improper respondent in the case because he is not a relative or a custodial parent and has no control over Baptista or the Child.

At a hearing on September 11, 2020, Baptista advised the Court that she would no longer proceed with her summary judgment motion. Thus, after the short letter exchange, the sole remaining issue is whether Wadghiri was named as a proper respondent. The Court advised the parties that it would construe Wadghiri's August 27 letter as a motion for summary judgment and directed further briefing on the narrow issue presented therein. Jacquety filed an opposition letter on September 24, 2020 and Wadghiri filed a reply on October 6, 2020. (See September 24 Letter; October 6 Reply Letter).

C.   THE PARTIES' ARGUMENTS

Wadghiri argues that he is an improper respondent because he is incapable of complying with any order rendered against him by this Court. He maintains that

because he is neither a relative nor a custodial parent, and Jacquety has offered no evidence that he has control over Baptista or the Child, Wadghiri would be unable to carry out an order directing the return of the Child to Morocco. Wadghiri supports his argument by pointing out that the Explanatory Report prepared by Elisa Pérez-Vera in connection with the 1980 sessions of the Hague Convention offers an expanded group of parties who may be held liable under the Convention, but limits that group to extended family members. See Elisa Pérez-Vera, Explanatory Report: Hague Conference on Private International Law, Acts and Documents of the Fourteenth Session, Child Abduction (the "Pérez-Vera Report").[4]

Likewise, the Report of the Special Commission of the Hague Conference limits those who may be named subjects in ICARA actions. Elisa Pérez-Vera, Report of the Special Commission: Hague Conference on Private International Law, Acts and Documents of the Fourteenth Session, Child Abduction (the "Special Commission Report"). Wadghiri asserts that the relevant case law also supports this

---

[4] Elisa Pérez-Vera was the official Hague Convention reporter and courts routinely recognize her explanatory report as "an authoritative source for interpreting the Convention's provisions." Gitter v. Gitter, 396 F.3d 124, 129 n.4 (2d Cir. 2005) (citations and internal quotation marks omitted).

7

approach by limiting the Hague Convention's authority to only grandparents and other close relatives.

Jacquety challenges these assertions, arguing that under the Hague Convention any person alleged to have wrongfully removed or retained a child, aided in a child's abduction, or participated in the abduction by providing shelter, may be named as a respondent. Jacquety relies on the language of the Convention itself, the Pérez-Vera Report, the Special Commission Report, and the text of ICARA to support his argument that liability is not limited to parents or blood relatives. Jacquety argues that international law as well as case law within the United States both support the proposition that other nonparents may be named as respondents. Jacquety argues that at trial he will prove that Wadghiri was deeply involved in various stages of the abduction plan, an essential component of which was that Baptista and the Child would live with him in New York. According to Jacquety, because of Wadghiri's extensive role in the removal of the Child, he has been appropriately named.

## II.   LEGAL STANDARDS

A. <u>SUMMARY JUDGMENT</u>

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is proper if, viewing all the facts of the record

in a light most favorable to the non-moving party, no genuine issue of material fact remains for adjudication." Samuels v. Mockry, 77 F.3d 34, 35 (2d Cir. 1996) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-50 (1986)). The role of a court in ruling on such a motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986) (citations omitted).

The moving party bears the burden of proving that no genuine issue of material fact exists or that, because of the paucity of evidence presented by the nonmovant, no rational jury could find in favor of the nonmoving party. See Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223-24 (2d Cir. 1994). Though a party opposing summary judgment may not "rely on mere conclusory allegations nor speculation," D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998), summary judgment is improper if any evidence in the record allows a reasonable inference to be drawn in favor of the opposing party, see Gummo v. Village of Depew, 75 F.3d 98, 107 (2d Cir. 1996). In other words, "[s]ummary judgment is inappropriate when the admissible materials in the record 'make it arguable'

9

that the claim has merit." Redd v. N.Y. Div. of Parole, 678 F.3d 166, 174 (2d Cir. 2012) (citations omitted).

B.  THE HAGUE CONVENTION

The Hague Convention's implementing legislation, ICARA, "establish[es] legal rights and procedures for the prompt return of children who have been wrongfully removed or retained." 22 U.S.C. § 9001(a)(4), (b)(1). The animating concern for the Hague Convention's drafters was "the practice in which a family member would remove a child to jurisdictions more favorable to his or her custody claims in order to obtain a right of custody from the authorities of the country to which the child had been taken." Ozaltin v. Ozaltin, 708 F.3d 355, 359 (2d Cir. 2013) (quoting Mota v. Castillo, 692 F.3d 108, 112 (2d Cir. 2012)) (internal quotation marks omitted). Thus, ICARA provides that "[p]ersons should not be permitted to obtain custody of children by virtue of their wrongful removal or retention." 22 U.S.C. § 9001(a)(2).

A "respondent" is defined in ICARA as "any person against whose interests a petition is filed in court . . . which seeks relief under the Convention." Id. § 9002(6). The Pérez-Vera Report further explains that under the Hague Convention, responsibility for child abduction was not meant to be limited "exclusively to one of the parents,"

10

and the Convention adopted a "wide view" under which others could be liable, including as examples, "a grandfather or adoptive father." Pérez-Vera Report ¶ 81. Likewise, the Special Commission Report acknowledges "the possibility of people, other than the father and mother . . . becom[ing] the active subjects in such actions." Special Commission Report ¶ 55.

C.  STANDING

Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2. To give meaning to this principle, the standing doctrine delineates "those disputes which are appropriately resolved through the judicial process." Susan B. Anthony List v. Driehaus, 573 U.S. 149, 157 (2014) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)) (internal quotation marks omitted). To establish standing, a plaintiff must show "(1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." Knife Rights, Inc. v. Vance, 802 F.3d 377, 383 (2d Cir. 2015) (quoting Driehaus, 573 U.S. at 2341) (internal quotation marks and brackets omitted).

11

The parties' arguments in this case focus on the third prong: redressability. To establish redressability, a plaintiff must show it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan, 504 U.S. at 561 (internal quotation marks and citations omitted). The plaintiff need not "show that a favorable decision will relieve his *every* injury." Dep't of Texas, Veterans of Foreign Wars of U.S. v. Texas Lottery Comm'n, 760 F.3d 427, 432 (5th Cir. 2014) (quoting K.P. v. LeBlanc, 627 F.3d 115, 123 (5th Cir. 2010)). Instead, a plaintiff "need only show that a favorable ruling could potentially lessen its injury." Sanchez v. R.G.L., 761 F.3d 495, 506 (5th Cir. 2014) (quoting Antilles Cement Corp. v. Fortuno, 670 F.3d 310, 318 (1st Cir.2012) (internal quotation marks omitted)).

In addressing redressability in the ICARA context, the Fifth Circuit in Sanchez concluded that naming the director of a foster care program as a respondent did not present jurisdictional issues. 761 F.3d at 506. There, after an aunt and uncle removed children from Mexico, the Department of Homeland Security placed the children in the custody of a foster care agency which in turn placed them in foster care. Id. at 499-500. The children contended that redressability was lacking because the director of the

12

foster care agency could not "be compelled . . . to return the children" as she was not their "actual physical custodian." Id. at 504. The Fifth Circuit rejected this argument, explaining that respondent "had knowledge of the children's location and, as director of child placement, had authority over the Baptist Services to direct their placement." Id. at 506. The court acknowledged that without naming additional parties, "the carrying out of any court order could become difficult," but nonetheless held that the director was a proper respondent because "[w]hen establishing redressability, a plaintiff need only show that a favorable ruling could potentially lessen its injury; it need not definitively demonstrate that a victory would completely remedy the harm." Id. at 506-507 (quoting Antilles Cement, 670 F.3d at 318 (brackets and internal quotation marks omitted).

Likewise, in Litowchak v. Litowchak, the district court held that a father could name his wife's father as a respondent in an ICARA action. No. 15 Civ. 185, 2015 WL 7428573, at *1 (D. Vt. Nov. 20, 2015). The wife challenged the addition of her father, arguing that it would be "futile" because he "d[id] not have legal or physical custody of the children," and therefore the court could not direct him "to remove the children from the United States

13

and return them." Id. at *2 (internal quotation marks omitted). In rejecting this argument, the court did not view his status as a close relative as the determinative reason for holding that the grandfather was a proper respondent. Id. Instead the court reasoned that responsibility under the Hague Convention is not limited to parents, and the remedies are not limited to orders directing a child's return. Id. Because the grandfather had a close relationship with the children, and petitioner had alleged he played a role in both the children's removal and "their alleged concealment," his actions were "clearly within the scope of actions addressed by the Hague Convention." Id. The court further held that, because he could be liable for expenses, returning the children was not the only form of redress and adding him as a respondent would not be futile. Id. at *2-3.

### III. DISCUSSION

As an initial matter, the Court is not persuaded that, because Wadghiri is not a relative or a custodial parent, he is an improper respondent here. Under ICARA, responsibility for child abduction is nowhere limited to a child's parents or relatives.[5] See 22 U.S.C. § 9001(a)(2)

---

[5] Nor is ICARA's authority limited to persons with physical custody under Section 9004(b), as Wadghiri argues. Section 9004 stands for the noncontroversial (and inapposite) proposition that, in ordering

14

("Persons should not be permitted to obtain custody of children by virtue of their wrongful removal or retention."); id. § 9002(6) ("'[R]espondent' means any person against whose interests a petition is filed in court . . . which seeks relief under the Convention.").

The Pérez-Vera Report further supports an expansive view of the Hague Convention's authority. See Pérez-Vera Report ¶ 81. The Report explains that, in defining who may be a "potential abductor,"[6] the Convention purposefully "contains no express provision." See id. The Hague Convention instead adopted a "wide view," characterizing wrongful removals carried out by not just parents, but also, as examples, "a grandfather or adoptive father" as child abduction. Id. Likewise, the Special Commission Report explains that nonparents, such as "for example a more or less distant relative or one of the adoptive parents, etc." may be subject to legal action under the Hague Convention. Special Commission Report ¶ 55. While Wadghiri correctly points out that the examples listed do not include "all other non-relatives," the conclusion he

---

provisional remedies, a court may not order a child removed "from a person having physical control" without satisfying applicable State law first. This provision thus identifies parties from whom the court may not provisionally remove a child; it does not, as a general matter, define which parties fall under the court's authority, much less does it limit such persons to those with "physical custody."

[6] In potentially telling fashion, Wadghiri incorrectly refers to this section as "Parental Abductors" in his October 6 Reply Letter.

15

draws from that omission -- that nonrelatives are categorically excluded -- defies reason. Both reports provide "examples," an indication that neither list is meant to be exhaustive and other nonparent parties are expressly contemplated. See, e.g., Sanchez, 761 F.3d at 506 (holding that director of foster care agency was a proper respondent in ICARA action). Further, while Wadghiri is not a blood relative, the evidence in the record could reasonably support a finding that he had a romantic relationship with Baptista, and that at least during some points in time, contemplated a family life with Baptista and the Child.

Furthermore, Wadghiri's alleged conduct brings him well within the Hague Convention's scope. As discussed above, Jacquety alleges that Wadghiri was involved in various stages of the Child's removal to New York. Contrary to his assertions, the burden falls on Wadghiri, as the movant, to prove "that no genuine issue of material fact exists" or that "no rational jury" could find in Jacquety's favor because of limited evidence. See Gallo, 22 F.3d at 1223-24. Here, no rational jury could conclude based on the text message evidence and ESTA form that Wadghiri was not involved in the alleged abduction scheme, and Wadghiri provides no compelling basis to conclude otherwise. As

16

noted above, the ESTA form supports an inference that both Baptista and the Child planned to reside with Wadghiri upon their arrival in the United States.[7] This cohabitation plan, in turn, supports the reasonable inference that Wadghiri assisted in the alleged abduction. The text messages could reasonably be interpreted as indicating that Wadghiri arranged and possibly funded Baptista and the Child's travel, and coordinated and participated in meetings with counsel regarding obtaining custody of the Child. Similarly, messages Wadghiri sent to Baptista could reasonably be viewed as directives regarding her correspondence with Jacquety. ICARA's prohibitions against the "wrongful removal or retention" of children certainly encompass this conduct. See Litowchak, 2015 WL 7428573, at *2.

Lastly, Wadghiri's claim that he "has no control over Respondent Tena Baptista or the Child" does not render Jacquety without standing to name him as a respondent. The Petition alleges, and Wadghiri does not deny, that Baptista and the Child currently live with him. To the extent Wadghiri argues that he does not have control over either

---

[7] This inference is not undermined by Wadghiri's assertion that the ESTA form Jacquety provided was incomplete. Even if the form does not reference the Child, jurors could reasonably conclude that the expected address of the minor Child was the same as that listed for the Mother.

one, this assertion is contradicted by the text message evidence suggesting that, with the help of Baptista's mother, Wadghiri coordinated travel arrangements for Baptista and the Child to arrive in New York, and that Wadghiri directed and encouraged Baptista to deceive Jacquety thereafter. The degree of Wadghiri's control and leadership is a disputed issue of material fact, which renders summary judgment inappropriate. See Samuels, 77 F.3d at 35 (stating that summary judgment is improper when a "genuine issue of material fact remains for adjudication").

Further, while Wadghiri alone may not be able to return the Child to Morocco, it is enough that he has "knowledge" of her whereabouts and can play some role in her return. See Sanchez, 761 F.3d at 506. That he cannot return her without Baptista's assistance does not create a jurisdictional defect. Id. Even though Wadghiri may have "difficulty" carrying out a return order, to establish standing, a plaintiff "need not definitively demonstrate that a victory would completely remedy the harm." Id. (citation omitted) (internal quotation marks omitted). Finally, to the extent Jacquety seeks other remedies, including fees, Wadghiri asserts no barriers to providing that form of redress. See Litowchak, 2015 WL 7428573, at

\*2; Neves v. Neves, 637 F. Supp. 2d 322, 346-47 (W.D.N.C. 2009) (awarding fees against family friends who assisted in the abduction plan by making travel arrangements and allowing the children to live with them).

## IV. ORDER

Accordingly, for the reasons stated above, it is hereby

**ORDERED** that the motion so deemed by the Court as filed by Respondent Yousseff Wadghiri for summary judgment (Dkt. No. 64) is **DENIED**.

**SO ORDERED.**

Dated:   New York, New York
         7 October 2020

                                              Victor Marrero
                                                U.S.D.J.